Today is number 171484 United States v. Joel A. Sabean Mr. Frawley May it please the court My name is Alfred Frawley and I represent Dr. Joel A. Sabean With the court's permission, I'd like to reserve three minutes of my time to respond to the government's argument Yes, you're welcome Could you get closer to the mic, please? Systematic misapplication of the rules of evidence deprived Dr. Sabean of a fair trial First, under Rule 404B, the District Court improbably admitted allegations of child sexual abuse and incest based on the mere promise that the evidence would show at trial that Dr. Sabean sent his daughter money and prescriptions to conceal this alleged abuse. That promise was broke at trial. That evidence never materialized. The District Court used that promise to join two entirely unrelated sets of charges, tax evasion and prescription fraud based solely on the promise that they would be joined by a common motive. The prescriptions did not arise from the tax evasion charges. The common motive was the only basis to join them. I always thought the motive could be proved by circumstantial as well as by direct evidence. I agree, Your Honor, but in this case there was no circumstantial or direct evidence. Why do you say there was no circumstantial evidence? Because There was evidence of what the defendant did. There was evidence of his relationship with his daughter. Why couldn't the jury infer that that relationship was motivating him to ignore the rules and mores of professional practice and supply her with the drugs? Because as principal accuser, the only witness that testified with knowledge of what Dr. Sabean was thinking said that he was not motivated by that conduct. So the direct evidence was that he was The jury is not obligated to accept that. That's a credibility call. And I think your argument boils down to an argument that you can't prove motive by circumstantial evidence and I find that unsettling. That's not my argument. You can prove motive by circumstantial evidence, but in this case the circumstantial evidence didn't prove the motive. To be specially relevant to motive, for circumstantial evidence to be relevant on that point, it needs to prove the motive without using bad character or propensity in the inferential chain. In this case, that But when you say you can't use the inferential chain, John, aren't you going right back to the point that Judge Selya raised? And that is, you can prove it by circumstantial evidence. Right, but in this case, there was no circumstantial evidence. Think about it. If Dr. Sabean abused his daughter, that does not mean there's no inference you can draw from that fact alone, which was the only fact that was in evidence that he did not think she was sick, or that he was not writing her prescriptions for a legitimate purpose. It doesn't matter whether he had a relationship that was alleged or not, because it doesn't bear on the crime's charge. You need something more. You need additional circumstantial evidence to link the motive. What you can infer, however, even without additional evidence, is that at least there is a possibility that all of this was basically a payoff to keep her quiet. And so it's not as though the possible inference just sort of stops at some threshold. Now, there can be an argument about how strong an inference is possible, and particularly in view of the evidence that she made up the story. That may very well be that it was weak, but the fact is there was a relevant argument to be made on the basis of that evidence. But I don't think that's true, Your Honor, because assuming they had this sexual relationship, how can you draw an inference that he was sending money to conceal that relationship based on the weight of all the other evidence that she said he was not sending her money to conceal the relationship? The relationship had ended well before the money it issued started being sent, well before any of the prescriptions were issued, and the sexual communications by email ended a year after the money started, and the money kept going. This relationship was not occurring during the time that the money was being sent, so there is no inference. Excuse me, if the motivation is to conceal the relationship, the fact that the relationship is no longer current is not determinative. Many people want to conceal things that have happened in the past and are not repeating themselves currently. Understood, Your Honor, but in this case there was nothing to conceal. Shannon had already told the government 20 years before about this alleged relationship. She had told everyone in the world about it. She says it every time she gets in trouble. It just makes no sense that he'd be trying to conceal something that she had already gone to the government about and which the government rejected out of hand. They didn't even report it to the state authorities. They didn't believe her. Let's start with it seems to me it's undisputed more or less that he sent her large amounts of money over a long period of time. It seems to me it's undisputed that he then, through his accountant, took a large amount of those expenditures and declared them as health expenditures. Correct. So what it comes down to is him saying, well, I legitimately thought those were for health expenses, those large amounts. It seems to me that if that's what the case is about, any fact finder would want to know something about the relationship between him and S.S. to judge how plausible that explanation was. I mean, things like heart transplant or something like that. And if you find out, if this evidence hadn't come in and there was no evidence about their relationship, then I would expect the defendant would be arguing his daughter told him he needed the money for health expenses. He sent it along. What other reason would he have to send the money? So the prosecution needs to be able to rebut what would be a powerful defense if there were no evidence about the relationship. I understand your point, and I think you're focused on the key issue. But just because they had an alleged relationship before the charge started, why does that have any bearing on whether he thought she was sick or not? It doesn't inform the key inquiry. The key inquiry is, did Dr. Sabin think his daughter was sick? It establishes a plausible motive narrative for why he would have been sending the money other than the one he would like to advocate. But that motive was disclaimed by the key witness. The government said this was designed to conceal the relationship. They said that was what the evidence was. Well, sure, but we have lots of criminal cases where both conspirators claim they're innocent and claim there's no conspiracy, and yet the jury can look at the evidence and draw inferences from the evidence and decide otherwise. Fair enough. And even assuming that the court's correct, that there was some minimal proven value in this allegation's circumstantial, These allegations were coming from a serial perjurer, a known confidence woman. There was just every reason to be super careful about allowing this into evidence, and there were no precautions taken whatsoever. Her speculation about what motivated his conduct or her inconsistent testimony about what happened 20 years before, as circumstantial evidence, it has very, very minimal proven value. The unfair prejudice that arises from it, I can't overstate that enough. She's accusing her father of molesting her as a child. Meanwhile, she's saying that had nothing to do with the crimes charged. Government's not even arguing their concealment theory anymore, and the jury's sitting there asking themselves, did he abuse his daughter or not? They're not asking themselves whether he sexually abused her. Judge Singel gave very careful, limiting instructions about the use to make of this evidence. He did, Your Honor, but he did not follow that limiting instruction, because he allowed the government to use this alleged relationship for purposes beyond motive. He allowed the government to argue that this sexual relationship meant that Dr. Sabian writing Shannon's prescriptions was outside the usual course of professional practice. It allowed the government to argue that the fact that Shannon had been abused as a child explained why she lied. So the more we caught her lying on the stand, the more her allegations seemed real. So you would have a point if the district court strictly adhered to those instructions, told the jury this is the only purpose you can consider it for, but he allowed the government to go beyond it. So the instruction's essentially worthless because the jury doesn't understand anymore. Well, I'm only supposed to consider it for this one purpose, but the judge is allowing it in for all these other purposes. The government's arguing that it goes to the objective standard of care. He didn't follow the instruction, and with all due respect, I don't think a limiting instruction in this case with allegations of this kind that just dominated the trial can cure any sort of error. I mean, these pictures, these pictures of naked women who were not Shannon, who were not witnesses in the case, who were not people that Dr. Sabian had ever met, hung up on the screen, blown up. These erotic fantasy stories about knights in shining armor, princesses and stuff, those were right out loud to the jury. You cannot, common sense tells us that a limiting instruction cannot make you unhear that stuff, cannot make you feel differently in your heart about this defendant when you're seeing these pictures on the screen. And I think, you know, regardless of whether the sexual abuse center should have gotten in, I think everyone would agree that Dr. Sabian had a right to report it, and that is the second part of our case is that we didn't have a chance to offer evidence that squarely impeached these allegations. We didn't have a chance to offer evidence that Dr. Sabian was not motivated by the sexual relationship. We had emails from a time when the sexual relationship was actually alleged to have been occurring where Dr. Sabian writes to Shannon saying, stop spending my money frivolously, I'm going to cut you off. That proves right there that he was not concerned about her telling the world about their relationship. When they were talking about money, he said, stop spending my money, I'm going to cut you off if you don't. And you also got in evidence to the effect that the claims of sexual abuse were false. Yeah, we got some evidence of that, but then that's, you know, he said, she said. We had more. We had Shannon in a Florida court just a month before trial under oath saying, my father sexually abused me and I'm the sole provider for my adult son who's paralyzed from the neck down when he's working on a plan of fitness and she hasn't seen him in two years. I mean, that is powerful stuff. That stuff that the jury, if they're entitled to listen to these allegations of sexual abuse, is entitled to know the context in which she's making them and why she's making them. She's telling a judge in Florida that I'm sexually abused by my father. Please go easy on me so that I can testify against him. And the jury was entitled to know that. If it's entitled to know one side of this terrible story, it's entitled to know the other side. And the other side is that Shannon made these allegations up every time she got into trouble and the tape of her testimony in Florida proved exactly what she was doing. But didn't that, as I understand your explanation to Judge Singal, it was that basically we want to show that she lied in Florida in court so that it can be inferred that she's lying here. And the rules are pretty clear. We don't allow evidence to be put in for that purpose. I didn't see you arguing an alternative purpose that didn't run through that line of logic. We did. We argued it was relevant context evidence. Everything's context. That doesn't get you anywhere. But these allegations got in for their context evidence. And so that context is very important. The government framed this whole case by she's going to accuse her father publicly for the first time. They set the context. She took the stand in tears, crying. We had a right to impeach that context by showing she's also crying when she's lying about her daughter and she was not testifying publicly for the first time. Thank you. Thank you. Excuse me. May it please the court. Julia Lopez for the United States. The district court did not abuse its discretion in any of the evidentiary rulings that have been challenged and the appellants have identified no other legal error that would result in reversal in this case. What about the photos up on the screen that counsel was just telling about? Is that a little going overboard? Your Honor, no. First of all, I'm not sure that that's really in the record that they hovered over the screen for the entire trial. I would ask the appellant to point to where in the record that's listed. I do know that there were times when, if you read the record, where the government had actually published exhibits to the jury and Judge Singel had actually said, is there any reason that you're not publishing these publicly? So I don't think the record reflects any effort by the government to have sort of large photos of naked women hovering over the screen. And if you look at the record, the government did move through this evidence rather efficiently. It did not spend hours and hours going through every e-mail, every photograph. It's our view that the sex abuse evidence, including the child abuse evidence and the e-mails, the ongoing communications between the defendant and his daughter, were admissible, as the district court found, to show both motive and absence of mistake. The jury could conclude from all the evidence that came in at trial that the tax scheme was an effort to conceal and offset the money that this defendant was paying to his daughter as a result of the sexual abuse. And there are really two reasons, I think, that the district court's ruling on this was correct. First, as the court has already noted, motive is a question for the jury, not for a particular witness. And it's our view that the evidence taken as a whole could allow a properly instructed jury to infer that the sexual abuse was the reason for these payments. In other words, the defendant's conduct was so strange, multiple cash e-mails a day, sometimes upwards of almost $500,000 a year in cash to his daughter, that there had to have been some particularly compelling reason that he would act in this way, particularly given that his bookkeepers were telling him that it was going to bankrupt him, and that the evidence showed that it was this very unusual relationship with his daughter that was the compelling reason that he was acting in such a strange way. We would also, though, disagree with the appellant's contention that the daughter, S.S., never tied the abuse to the payments. There are multiple places in the record where she actually did make the link. For example, she testified at pages 402 and 3 of the appendix that the defendant threatened to cut her off if she didn't continue talking to him in the same way. She referenced that she was saving him from the warden, who was his wife. At pages 514 through 16, she indicated that the defendant wanted her to keep contacting him that way, referencing these lovegrams going back and forth, the sexual chatter going back and forth, and that there was an implied understanding that the money was for that, and that he also wanted to keep her happy and quiet. She testified on page 645 of the record that she was told throughout her life not to discuss the abuse, and there are other places in the record where she does make the link. So it's our view that the jury could conclude, based on both her testimony and the evidence as a whole, that this went to motive, and it also, of course, went to absence of mistake. The defendant's entire defense was that he believed his daughter, and a jury would be left with a very one-sided and misleading impression that they did not understand the true nature of the relationship between these two individuals. It's also our view that the court properly struck the balance, the 403 balance. That's, of course, a matter that is vested in the district court's discretion. The district court's limiting instruction said specifically that the evidence could be used for motive or intent, and that the government complied with those instructions in the way it used the sex abuse evidence. Counsel for the appellant suggests that the government, despite the limiting instruction, went beyond the limiting instruction and used the evidence once it was in for other purposes. What's your response to that, Ms. Lopez? No, no, I don't think that's consistent with the record. Again, the limiting instruction was that it could be used for motive or intent. The two examples that the appellants have given where it was used, they say, improperly was one asking our expert about the course of professional practice and whether having a sexual relationship with a patient is outside the course of professional practice. Of course, there's a good faith portion of the professional practice prong on these drug distribution counts, and I would argue that whether the defendant had a sexual relationship with his patient or not goes really to his good faith and his intent in terms of whether, was he actually trying to act within the course of professional practice or was he actually prescribing these drugs in a criminal matter. I know that there is a, it's an old Ninth Circuit case, it's called Potter 616F2nd 384, where the court allowed in evidence of a sexual relationship between a doctor and his patients for this very reason to describe, so that the government was able to argue from that that this was actually outside the bounds of professional practice. So we would argue that that goes to intent consistent with Judge Singal's limiting instruction. Similarly, it was used very briefly by the government to attack the credibility of Dr. Voss, the defendant's psychiatric expert, who had testified that it was his medical opinion that Dr. Sabian had some sort of personality disorder that did not enable him to test reality when it came to his daughter. He was simply asked by the government, isn't it true that victims of sexual abuse sometimes have, lie or have antisocial personality traits, and that was going again to Dr. Voss's testimony about what the defendant's intent was, and it was used to attack his credibility. In other words, it suggests that perhaps he had not considered the entirety of the story here and had discounted SS's allegations too quickly, given that he knows that victims of sexual abuse can have a history of lying. So we would argue that there it also goes to intent. What the government never did was use it in an impermissible propensity purpose, which is really the concern when we're talking about 404B and the 403 analysis, and that simply there's nothing in the record to suggest that that happened. What about the two e-mails from 2005 that the defendant offered that the government seemed to say object to them on hearsay grounds, but they weren't being offered for the truth of the matter, as I read the record, so did we have an error in ruling on those? No, Your Honor, I don't believe so. I would urge the court to look very carefully at Judge Singal's ruling here. I'm just trying to find it. It's at 648 to 650 of the appendix, because it's actually a very narrowly tailored ruling. So the court looks at these two e-mails. They're from 2005. They're tabs 21 and 22 of the appendix. They contain statements from Dr. Savian along the lines of threatening to cut SS off from her money and then lots of additional information about how much money she spent, that she's bleeding them dry, things like that. What Judge Singal, I think very appropriately, said was if you were just offering this to say I'm going to cut you off, that might be a statement of intent, but the rest of this e-mail is hearsay. And what he did is he allowed them to question SS about the substance of the threat, and that testimony did come in. She looked at the e-mails while she was testifying and indicated that he was threatening to cut her off. But Judge Singal, I think very appropriately, said putting in the entire e-mail presents 403 problems and hearsay problems because there's all sorts of unrelated information that is for the truth. In other words, how SS is spending the money. I know the court's recent Neil West case, which talks about the 8033 exception, and that it's not really state-of-mind evidence that the underlying facts going into the belief have to be true. They're offering it to show that the defendant threatened to cut SS off because of the way she was spending the money. In that sense, the underlying facts in those e-mails would have to be true, and there is a hearsay problem. I would also note, though, as I said, that Judge Singal did allow them to ask the questions about the threats, that information did come in. And he also said in his ruling that I would invite a narrower submission on this e-mail if you want to give it to me, perhaps suggesting that they redact portions of it or something like that, and that the appellants never followed up on that. So we would suggest that there's absolutely no abuse of discretion. In addition, they were allowed to present far more probative evidence of the defendant's state of mind, namely the testimony of their psychiatric expert that he had this personality disorder. So the jury was in no way disabled from considering their arguments about whether the defendant truly believed his daughter or not. In terms of the Florida testimony that was excluded, the transcript and the audio of SS's testimony in Florida, it's our view that that was an appropriate and proper 608B ruling, that this was clearly extrinsic evidence under this court's Winschenbach decision. And I would note that the appellant was not precluded from proper cross-examination on this issue. The question that they put to Judge Singal is they wanted to put the transcript and the audio in as substantive evidence, extrinsic evidence on his own, and that's what he ruled on. The government never objected that they could properly cross on things that she had said in Florida, that lies she had made to the judge in Florida. They asked a couple questions about things she had said and then did not follow up on that as well. So there was no inability for them to test her credibility through proper cross-examination. They simply did not do it. In addition, the court admitted voluminous evidence of SS's untruthfulness. This was a multi-day, very damaging cross-examination. She said multiple times that she had been a liar throughout her entire life. The defense was able to probe very specific instances of lying, think times that she had defrauded her own father. The defense was able to, and the government, put in, in fact, her immunity agreement. So they were able to argue that the very pertinent motive for lying in this case, that she had received immunity, that was all in front of the jury. They were also able to argue that she, in 1997, had lied to a grand jury and only after she was caught did she indicate that she had been sexually abused. So Judge Singal's 403 ruling on that Florida transcript, we believe, is absolutely correct, given that the jury was provided ample evidence to call into doubt SS's credibility and that ultimately the jury was able to weigh the competing evidence and conclude that she was credible. We would also note that any evidentiary ruling on the 608B issue or on the state-of-mind evidence we would argue is harmless, given the overwhelming evidence of guilt in this case. Just very briefly, some of the evidence going to show the defendant's intent here is the method of sending this money, multiple cash transfers daily. He has multiple emails to his bookkeepers referencing conversations he had with doctors and billing people about SS's treatment that we know had to have been lies, because none of those people existed. Her medical history is simply not medically possible. We had an expert testify to that, and I would suggest to the court, if you read the emails even to a layperson, what he is describing does not seem possible. And he is a trained medical doctor. He never visited his daughter in Florida, despite claiming that she was on her deathbed, but during this period of time was able to attend conferences out of state. The medical bills themselves that he is putting forward for medical deductions show no consistent pattern of care, but they are at hospitals all over Florida. He kept telling his bookkeepers that these enormous medical bills could only be paid in cash, and that is why he had to send the money directly to SS, who was apparently on her deathbed, but was nonetheless making the cash payments to the doctor. The prescriptions, he is not consulting with her treating doctors, apparently, while he is making all of these prescriptions to her while out of state. So there is ample evidence, overwhelming evidence of guilt. So any of these evidentiary rulings, in terms of the six-way B or the state of mind, we would suggest are harmless. Very briefly, I will just say that we have put forth in our brief why Judge Singal's ruling on severance was proper. We believe that sufficient evidence supported the conviction on the drug distribution charges,  The appellant has not identified any authority that would suggest that the court has to instruct that the defendant was acting as a drug pusher or drug dealer. That is not consistent with the Moore or the Feingold cases that are cited in the appellant's brief. So unless there are additional questions, it is our position that there was no abuse of discretion on any of the evidentiary rulings, and that there is no other error of law that has been identified, and we urge the court to affirm. Thank you. For the record, the government introduced 116 separate emails that were either erotic pictures or erotic fantasy stories, some of which were put on the screen, all of which the jury saw on their small screens, all of which were taken back into the deliberation room. I want to address this harmless error argument, particularly as it goes to Dr. Sabian's mental state. This jury deliberated for five days. Much of what Ms. Lopez just said, Dr. Sabian didn't dispute ever going to Florida. He didn't dispute that these descriptions of illness were outlandish. His defense was, I have a mental disorder that causes me to believe everything that Shannon says. And we had perfect evidence of just how impaired he was, which was he once tried to cash a $10 million check forged by Shannon at a drive-thru window of a local bank. Anyone who thinks, A, that Shannon has $10 million, and B, that you can just go to a drive-thru window of a bank and deposit a $10 million check, is mentally impaired enough to believe that Shannon was really sick. This was a diagnosis that he was first diagnosed with in 1994, the same diagnosis he had in 2017. This was a long history, and if the jury had heard evidence of what he tried to do with that check, it would have been able to place him on the continuum, which everyone in the courtroom agreed Dr. Sabian felt somewhere on the continuum, would place him on the end of delusional thinking side of it. But instead, what the jury heard was that Dr. Sabian thought the check was a joke. The check was in evidence. Shannon says, I gave it to my dad as a joke for his birthday. His birthday wasn't for another four months. That's all the jury heard about it. The truth was, he thought it was real. He tried to deposit. So when the government talks about a one-sided story, in this case, we have a one-sided story that's just completely in the government's favor against Dr. Sabian. And that check was excluded under Rule 608. We weren't offering that check to show Dr. Sabian's character for truthfulness. It doesn't go to that. We were offering it to show its state of mind. And he said, 608 and 403, it's out. Government never made a 403 objection. Check was already in evidence. And so the unfair prejudice of showing what Dr. Sabian actually did with it is nonexistent, particularly when all the jury's left to hear is a falsehood. And the probative value of him trying to attempt to deposit that check proved his entire defense. I mean, the jury spent five days deliberating over this unusual case. With all this evidence that the government says showed Dr. Sabian was guilty, it still spent five days. It has to re-read, re-hear the testimony of these experts. It was focused in on whether he believed Shannon was sick. This evidence squarely showed where he fell on that continuum. The judge seemed to be concerned some about the chronological lack of, or remoteness of the check incident from the incident giving rise to the charges. It was, what, 1993? 1995, Your Honor. And I think that's the problem. The government was allowed to say that, allowed to have Shannon claim that she was sexually abused in 1995. The government put in evidence that Dr. Sabian brought money to her apartment in 1995. We were allowed to show, yeah, he's bringing her money because she's defrauding him in 1995. So the government opened the door to that. Thank you very much. Thank you, Counsel.